

# In the Court of Criminal Appeals of Texas

---

No. PD-0101-25

---

LATORA BRIMZY, *Appellant*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Fourteenth Court of Appeals
Harris County

---

YEARY, J., delivered the opinion of the Court in which SCHENCK, P.J., and KEEL, FINLEY, and PARKER, JJ., joined. RICHARDSON, NEWELL, and MCCLURE, J.J., concurred in the result. WALKER, J., dissented.

This case involves a dispute in the courts of appeals over the scope of Article 42A.751(i) of the Texas Code of Criminal Procedure—better

known as the "failure-to-pay statute." TEX. CODE CRIM. PROC. art. 42A.751(i). This statute explains:

> In a revocation hearing *at which it is alleged only* that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the costs of legal services as described by Article 42A.301(b)(11), the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

TEX. CODE CRIM. PROC. art. 42A.751(i) (all emphasis added). This subsection of the community-supervision-revocation statute imposes a burden on the State to prove a probationer's ability to pay, and failure to pay, among other things, court costs and community supervision fees in certain proceedings.[1]

Some courts of appeals have concluded that Article 42A.751(i) applies only when nonpayment is the *sole ground alleged by the State* in its pleading. *E.g., Davis v. State*, 591 S.W.3d 183, 193 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Other courts of appeals, including the court of appeals in this case, have concluded that 42A.751(i) applies

---

[1] This case involves a hearing on a motion to revoke and proceed to adjudicate following deferred adjudication community supervision rather than a motion to revoke ordinary community supervision. *See* TEX. CODE CRIM. PROC. Chapter 42A, Subchapter C, art. 42A.108 (providing for a hearing upon a violation of deferred-adjudication community supervision). Because neither party contests the application of Article 42A.751(i) to a hearing on an alleged violation of deferred-adjudication community supervision, rather than the revocation of regular community supervision, we assume, without deciding, that Article 42A.751(i) applies equally to adjudication proceedings. Additionally, we note that the terminology of "probation" was converted to "community supervision" in 1993. *See* Acts 1993, 73rd Leg., ch. 900, §§ 4.01, 13.03, eff. Sept. 1, 1993. Nevertheless, for ease of reference, we will call a person serving community supervision a "probationer" throughout this opinion.

anytime that nonpayment is the *sole basis for the trial court's order*, regardless of whether the State has also alleged other grounds. *E.g.*, *Scales v. State*, 658 S.W.3d 366, 374 (Tex. App.—Corpus Christi 2022, no pet.). We conclude that the language of 42A.751(i) plainly does *not* apply unless nonpayment is the sole allegation.[2]

Because the State proceeded here through its pleadings on other grounds as well, at least one of which was pursued by the State throughout the adjudication proceedings, we conclude that Article 42A.751(i) did not apply to Appellant's case. This is true, even though the trial court ultimately ordered adjudication only on the nonpayment ground alleged by the State. We therefore reverse the judgment of the court of appeals and reinstate the trial court's order adjudicating Appellant's guilt.

---

[2] We do *not* necessarily conclude that Article 42A.751(i) applies only when the State's written *motion to revoke or motion to proceed to adjudication* has "alleged only" the nonpayment of the enumerated costs. The statute does not explicitly limit its application to cases of revocation or adjudication in which the State's *pleading* alleged only such a ground. It does not say, for example: "In a revocation hearing at which *the State's motion to revoke community supervision* alleged only that . . . ." (Emphasis added). Instead, on its face, it simply says: "In a revocation *hearing* at which it is alleged only that . . . ." (Emphasis added). This difference could lend itself, we think, to broader interpretation. It could be argued that the limitation on application of the State's burden inheres any time the State's motion to revoke or proceed to adjudication at least *includes* an allegation (or allegations) of failure to make one of the enumerated payments, and the State opts to proceed at the hearing only on that specific allegation (or those specific allegations), and no other, for example, by abandoning all but the nonpayment allegation(s) in its motion to revoke/adjudicate. But we need not resolve that argument to dispose of the instant case. Our conclusion that the court of appeals erred to hold that Article 42A.751(i) applies even when the State alleges and pursues other, non-payment-related claims will suffice to resolve the case before us. "We leave for another day the task of further winnowing the meaning of [the statute], should the need arise." *Timmins v. State*, 601 S.W.3d 345, 356 (Tex. Crim. App. 2020).

## I. BACKGROUND

### A. Initial Proceedings

Appellant was indicted for the felony offense of aggravated assault on a family member. TEX. PENAL CODE § 22.01(b)(2). She pled guilty to the lesser misdemeanor offense of assault on a family member in exchange for one year of deferred-adjudication community supervision. TEX. PENAL CODE § 22.01(a)(1). Then, later, the trial court extended Appellant's deferred adjudication for another year.

During that additional year, the State moved to adjudicate Appellant's guilt. It alleged that she (1) committed a new offense, (2) failed to participate in anger management training, and (3) failed to pay, among other monetary obligations, community supervision fees. Appellant pled not true to all of the State's allegations. At the hearing, however, the State abandoned the new-offense allegation, but it continued to pursue all of the failure-to-pay allegations and the failure to participate in anger-management-training allegation.

At the conclusion of the hearing, the trial court adjudicated Appellant guilty and sentenced her to one year in jail. But the trial court's order adjudicating Appellant's guilt listed only her failure to pay fees as the basis for the adjudication. Appellant then gave notice of appeal from the trial court's order.

### B. Appellate Proceedings

In the court of appeals, Appellant argued that the trial court abused its discretion by adjudicating her guilt because the State did not meet its statutory burden of proof under the failure-to-pay statute. *Brimzy v. State*, ___ S.W.3d ___, No. 14-22-00631-CR, 2024 WL 1313406

at *1 (Tex. App.—Houston [14th Dist.] Mar. 28, 2024).[3] The court of appeals sustained Appellant's claim. It concluded that Article 42A.751(i) imposes a burden on the State in *all cases* in which nonpayment is "the sole ground supporting revocation." *Id.* at *1, *5. It made no difference to the court of appeals whether or not "the State alleged other grounds for revocation" in its pleading. *Id.* at *1, *5.

The court of appeals relied primarily for its conclusion on this Court's opinion in *Stanfield v. State*, 718 S.W.2d 734 (Tex. Crim. App. 1986). *Brimzy,* 2024 WL 1313406 at *5. In *Stanfield*, this Court had determined that an early predecessor to the current failure-to-pay statute, former Article 42.12, Section 8(c), of the Code of Criminal Procedure, applied to *all cases* of revocation involving nonpayment of supervision fees as a ground therefor, *regardless of the content of the State's motion* to revoke the community supervision.

The court of appeals explained that the Legislature evinced an intent that the statute should not apply exclusively to cases in which nonpayment is *the sole ground <u>alleged</u>* when it eventually amended former Article 42.12, Section 8(c), in 2007, to comply with the United States Supreme Court decision in *Bearden v. Georgia.* 461 U.S. 660 (1983); *Brimzy,* 2024 WL 1313406 at *5. *Bearden* had imposed certain due process requirements whenever probation is revoked based on nonpayment alone. 461 U.S. 660, 665. Finally, the court of appeals

---

[3] Appellant also argued that the trial court violated her federal due process rights by sentencing her to incarceration for failure to pay community supervision fees without first determining whether her failure to pay was willful. *Id.* But the court of appeals did not address the merits of the due process claim because it concluded that Appellant had failed to preserve it during the adjudication proceeding. *Id.* at *2.

determined that restricting the statute's application to cases in which nonpayment is the sole ground *alleged* would be absurd because it would permit the State to avoid application of the statute by simply alleging additional grounds beyond nonpayment—regardless of merit. *Id.* (citing *Stanfield,* 718 S.W.2d at 736–37).

The State sought discretionary review in this Court, asserting two issues. We granted review to address the State's second issue: "Does the failure-to-pay statute apply to adjudication proceedings where the State alleges nonpayment and additional non-monetary grounds, but the trial court adjudicates on solely the nonpayment ground?"[4] Our answer is no.

## II. THE HISTORY OF CURRENT ARTICLE 42A.751(i)

The failure-to-pay statute is currently found in Article 42A.751(i), and it establishes that "[i]n a revocation hearing at which it is *alleged only* that the defendant violated the conditions of community supervision by failing to pay community supervision fees . . . the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay[.]" TEX. CODE CRIM. PROC. art. 42A.751(i) (emphasis added). The present iteration of the statute is not the first of its kind.

### A. Before 1977

Before 1977, this Court had concluded that the State had the burden to prove *both* a probationer's *ability* to pay *and* his *intentional failure to do so* whenever it alleged nonpayment as at least one basis for revocation and no other ground for revocation was sufficiently

---

[4] In its first issue, the State asked whether probationers must object during revocation proceedings when the State fails to meet its burden under the failure-to-pay statute. We did not grant review on that issue.

established. *See Herrington v. State*, 534 S.W.2d 331 (Tex. Crim. App. 1976) (concluding that the trial court abused its discretion in revoking probation when the State did not prove intentional failure to pay, and it also failed sufficiently to establish four other grounds relied on for revocation).[5] In 1977, however, the 65th Legislature passed Article 42.12, Section 8(c), which shifted the burden of proof *on the issue of ability to pay* from the State to the probationer, making *in*ability to pay, by statute, an affirmative defense. The statute did *not* speak, however, to the issue of intentionality.

### B. The 1977 Statute[s]

Curiously, the 65th Legislature enacted *two* versions of Section 8(c), which were nearly, but not quite, identical. The first version of Section 8(c), proposed in Senate Bill 32 (S.B. 32), applied in probation revocation hearings in which "it is alleged *only* that the probationer . . . failed to pay probation fees, court costs, or reparations." S.B. 32, 65th Leg., § 1 (1977) (emphasis added). The original version of S.B. 32 had not included the adverb "only" to modify "alleged," but the Senate amended the statute to include the adverb after the bill initially failed to pass in the House. *Id.* The second version of Section 8(c), proposed in Senate Bill 61 (S.B. 61), did *not* include the word "only" to modify "alleged," but it added "compensation paid to appointed counsel" as an

---

[5] *See also Gipson v. State*, 383 S.W.3d 152, 158 (Tex. Crim. App. 2012) ("Prior to the 1977 codification of the law pertaining to revocation proceedings involving failure to make required payments, this Court, in reviewing a sufficiency challenge to revocation based on failure to pay, routinely held that the evidence must show (1) that a defendant was able to pay and (2) that he had acted intentionally.").

additional category of payment for which a probationer must establish an inability to pay.[6] S.B. 61, 65th Leg., § 4 (1977).

Both versions of Section 8(c) shifted the burden of proof with respect to the probationer's ability to pay from the State to the probationer himself. But S.B. 32 seemed to do so only when the *only* allegation that the State pursued at the revocation hearing was one of the enumerated nonpayment allegations. In contrast, S.B. 61 seemed to shift the burden to the probationer *regardless* of whether the State alleged grounds for revocation beyond mere nonpayment of one of the enumerated costs or fees. Both duplicate subsections passed, and they were made effective on the same date, and they co-existed on the books of our statutory law for four years.

### C. The 1981 Amendment

---

[6] The two subsections in § 8(c) read:

(S.B. 32) "(c) In a probation revocation hearing at which it is alleged *only* that the probationer violated the conditions of probation by failing to pay probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of the evidence."

Acts 1977, 65th Leg., ch. 342, § 2, p. 909, eff. Aug. 29, 1977 (emphasis added).

(S.B. 61) "(c) In a probation revocation hearing at which it is alleged that the probationer violated the conditions of probation by failing to pay *compensation paid to appointed counsel*, probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of the evidence."

Acts 1977, 65th Leg., ch. 388, § 2, p. 1058, eff. Aug. 29, 1977 (emphasis added).

It was not until 1981 that the Legislature acted to remedy this duplication. It repealed what had started out as S.B. 61 and amended what had been S.B. 32, creating a new version of Article 42.12, Section 8(c), which effectively blended the duplicate statutes:

> (c) In a probation revocation hearing at which it is alleged *only* that the probationer violated the conditions of probation by failing to pay *compensation paid to appointed counsel,* probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of the evidence.

Acts 1981, 67th Leg., ch. 538, §§ 1 & 2, p. 2246, eff. June 12, 1981 (emphasis added). It should be noted that the adverb "only," modifying "alleged," was retained in the 1981 amendment, while the version of the statute that did *not* include "only" was expressly repealed. Of course, this legislative fix occurred more than five years before *Stanfield*.

### D. *Stanfield*

In October of 1986, this Court was called upon for the first time, in *Stanfield*, to reconcile the 1977 duplicate versions of Section 8(c) with respect to the scope of the statute's burden-shifting applicability. The Court was required to construe the competing 1977 versions of Section 8(c) (instead of the blended version in the 1981 amendment) at this time because Stanfield's own revocation hearing had occurred before the 1981 amendment's effective date. *See Stanfield*, 718 S.W.2d at 735 n.1; *id*. at 740 (Davis, J., dissenting) ("The probation revocation hearing in the instant case was held on January 16, 1981, prior to the effective date of the 1981 new version of [Section] 8(c) which did away with the dual enactment of 1977."). Thus, the original 1977 incarnations of Section 8(c)

were already long defunct by the time this Court came to reconcile them in its opinion in *Stanfield*.

In *Stanfield*, the State had alleged two grounds for revocation of the probationer's regular probation: (1) commission of a subsequent offense and (2) failure to pay his probation fee. *Id*. at 735. The trial court found that Stanfield committed both violations. *Stanfield v. State*, 638 S.W.2d 127, 128 (Tex. App.—Fort Worth 1984). On appeal, Stanfield argued that the evidence was insufficient to support the revocation. *Id*. On original submission, the court of appeals agreed. *Id*. at 129. It held that the evidence failed to establish commission of the subsequent offense. *Id*.

With respect to the nonpayment ground for revocation, the court of appeals first observed that, even after the 1977 addition of Section 8(c) to Article 42.12, the State was still required to prove *both* Stanfield's inability to pay *and* that his failure to pay was intentional. *Id*. It apparently came to this conclusion by considering only the S.B. 32 version of Section 8(c)—the one with the adverb "only" modifying "alleged"—and concluding that, because the State had alleged a ground for revocation beyond nonpayment, the burden-shifting to the probationer on the issue of ability to pay, embodied in Section 8(c), did not apply. *Id*. at 128−29; *Stanfield*, 718 S.W.2d at 735. Ultimately, the court of appeals concluded that the State *did* satisfy (what it believed to be) its burden to prove Stanfield's ability to pay, but that it nevertheless failed to prove intentionality. *Stanfield*, 638 S.W.2d at 129. On that basis, the court of appeals reversed the revocation order and remanded the cause. *Id*.

In a motion for rehearing in the court of appeals, the State pointed out that the 1977 Legislature had in fact passed *two* versions of Section 8(c), only one of which contained the adverb "only." *Id*. In its opinion on rehearing, however, the court of appeals did not bother to try to harmonize the two competing versions of Section 8(c). Instead, it concluded that, *regardless* of the scope of Section 8(c) with respect to shifting the burden of proof as to the probationer's *ability to pay*, it did nothing to change the burden remaining on the State to prove that the nonpayment was *intentional. Id* at 130 (op. on reh'g). And on *that* basis, it persisted in its conclusion that the State's evidence had been deficient in that respect. *Id*.

On discretionary review, this Court reversed the court of appeals' judgment. *Stanfield*, 718 S.W.2d at 739. But the reversal did not ultimately turn on the Court's observations with respect to the significance of the adverb "only" in S.B. 32. It is true that this Court's *Stanfield* opinion suggested that the word's meaning was subject to an interpretation that would avoid what it considered to be an "anomalous" result.[7] *Id*. at 736−37. The Court seemed to regard a construction of the words "alleged only" that would result in the statute applying only when

---

[7] In a footnote, the Court in *Stanfield* suggested that usage of the adverb "only," as well as its placement in a sentence, can result in ambiguity, and that it "also has several meanings, including 'at the very least.'" 718 S.W.2d at 736 n.3. Later in its opinion, the Court further suggested that "we avoid the anomalous result" it alluded to earlier in its opinion (but never adequately described) by reading "only" not in its natural sense as used in Section 8(c), but in the alternative sense of "at the very least." *Id*. at 737. The Court's obiter dicta might have proved more "persuasive," *see* note 10, *post*, had it better explained what it regarded as the anomaly of reading "alleged only" in its natural sense in the context of the statute as a whole.

a failure to pay was *the only ground alleged* to be, at least "quirky," if not downright absurd. *Id*. For these reasons, the Court suggested that the phrase "alleged only" in the statute should not be given its most natural reading. But the Court's suggestion was no more than obiter dictum, because the Court would unquestionably have reached the same bottom line in the case even without it.[8]

This is so because this Court ultimately *agreed* with the court of appeals' conclusion, in its opinion on rehearing, that Section 8(c) simply did not speak to the burden of proof with regard to the *intentionality* of a probationer's failure to pay. Both the court of appeals and this Court concluded that the State's evidence was sufficient to establish that Stanfield had the *ability* to pay his probation fees. *See id*. at 737 ("[*I*]*nability* to pay was not an issue in the revocation hearing."); 638 S.W.2d at 129 ("The State proved ability, but did not prove intent, and [on that basis] we sustain [Stanfield's] first ground of error."). Thus, it did not matter what this Court had to say about the proper allocation of the burden under the statute with respect to *ability* to pay. The Court ultimately reversed the court of appeals' judgment because it erred to conclude that the State had not adequately proven Stanfield's

---

[8] *See* BLACK'S LAW DICTIONARY (12th ed. 2024), at 570 (defining obiter dictum as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)"). Nothing about this Court's discussion in *Stanfield* about what it perceived to be the legislative intent behind the use of the adverb "only" in S.B. 32's version of Section 8(c) was necessary to its wholly dispositive conclusion that, in any event, Stanfield's ability to pay was never in issue and the State had satisfied its common law burden to prove that he had intentionally failed to pay his probation fee. *See* text, *post*.

*intentional* nonpayment, as *both* courts believed was still required. It was on *that* basis—having nothing to do with the proper construction of Section 8(c)—that this Court reversed the court of appeals and affirmed the trial court's order revoking probation.

In any event, *Stanfield* had not yet been decided in 1981, when the Legislature amended Section 8(c) of Article 42.12 to unify the two competing 1977 versions of that provision. When it chose to retain the adverb "only" in the 1981 amendment, the Legislature could not possibly have predicted *Stanfield*'s peculiar obiter dicta, and it could not have had it in mind when retaining the word "only" in the statute while enacting its legislative fix.

### E. Subsequent Amendments in 2007 and 2015

Later, the Legislature once again included the adverb "only" to modify "alleged," in a 2007 amendment to the (by then renumbered) failure-to-pay statute. Under the 2007 amendment, now-Article 42.12, Section 21(c), was made to read:

> In a community supervision hearing at which it is alleged *only* that the defendant violated the conditions of community supervision by failing to pay compensation paid to appointed counsel, community supervision fees, or court costs, *the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay*.

Acts 2007, 80th Leg., ch. 604, §1, p. 1160, eff. Sept. 1, 2007 (amending then-TEX. CODE CRIM. PROC. art. 42.12, § 21(c)) (emphasis added).[9] In

---

[9] Between 1981 and 2007, the ability-to-pay statute was shuffled from one section of Article 42.12 to another, without substantive amendment, other than substituting the language of "community supervision" for that of "probation." *See* Acts 1989, 71st Leg., ch. 785, § 417, p. 3517, eff. Sept. 1, 1989 (recodifying Section 8(c) as Section 24(b) of Article 42.12); Acts 1993, 73rd Leg.,

contrast to the 1981 version, the 2007 amendment thus flipped the burden of proof regarding ability to pay back to the State. Moreover, for the first time, the provision included within the burden (now re-assigned to the State) the obligation to prove, not just that the probationer had the ability to pay, but that he in fact "did not pay[.]"[10] And finally, the list of enumerated payments to which the provision applied no longer included "restitution" and "reparations[.]"

In 2015, the Legislature again recodified the failure-to-pay statute, moving it from Article 42.12, Section 21(c), into Article 42A.751(i), where it currently resides. Acts 2015, 84th Leg., ch. 770, § 1.01, p. 2362, eff. Jan. 1, 2017. No substantive changes were enacted at

---

ch. 900, § 4.01, p. 3740, eff. Sept. 1, 1993 (recodifying Section 24(b) of Article 42.12 as Section 21(c) and changing the nomenclature of "probation" to "community supervision").

[10] It might be argued that what was thought to be the former common law requirement that the State prove that the probationer's failure to pay was *intentional* has thus now been expressly incorporated into the statute. But this Court seems to have concluded otherwise, in 2012. *See Gipson v. State*, 383 S.W.3d 152, 159 n.3 (Tex. Crim. App. 2012) ("[W]e conclude that the 2007 amendment dispensed with [the common-law] requirement [that the State prove intentionality] with respect to the payments listed in the statute because, by its plain language, the ability-to-pay statute requires only that the State demonstrate . . . that the defendant was able to pay and did not."). Nonetheless, *prior* to the 2007 amendment, it was thought that the common law required the State to prove intentionality notwithstanding the statute. *See Stanfield*, 718 S.W.2d at 738 ("We conclude the State still has the burden of proving an alleged failure to pay fees, costs and the like was intentional."). Indeed, it was *Stanfield*'s conclusion with respect to intentionality that essentially rendered its observations about the meaning of "alleged only" in the statute pure obiter dicta. In any event, we need not revisit the question of the burden (if any) with respect to intentionality today.

that time.[11] Thus, since 1981, the failure-to-pay statute has expressly applied "[i]n a [probation/community supervision] revocation hearing at which it is alleged *only* that" certain required payments were not made. (Emphasis added). The major changes since the 1981 amendment include re-assigning the burden of proof on ability (and, perhaps, also now, intentionality[12]) to the State, and the deletion of some of the original enumerated costs, namely, "restitution" and "reparations[.]"

### III. THE COURTS OF APPEALS ARE SPLIT

The courts of appeals are split into two camps with respect to the meaning of the word "only" as it currently appears in Article 42A.751(i).[13] Courts of appeals in the first camp, which includes the Fourteenth Court of Appeals in this case, have read the failure-to-pay statute consistently with *Stanfield*'s construction. *See Brimzy,* 2024 WL

---

[11] Article 42A.751(i) itself was amended in 2017, but that amendment is not relevant to the question of what "alleged only" means in the context of the provision. The 2017 amendment removed the phrase "compensation paid to appointed counsel" and replaced it with the phrase "and by failing to pay the costs of legal services as described by Article 42A.301(11)[.]" Acts 2017, 85th Leg., ch. 324, § 23.014(a), p. 953, eff. Sept 1, 2017; *see* note 1, *ante.*

[12] *See* note 10, *ante.*

[13] The first camp includes the Second, Thirteenth, and Fourteenth Courts of Appeals. *See Brown v. State*, 354 S.W.3d 518, 520 n.3 (Tex. App.—Fort Worth 2011, pet. ref'd); *Scales v. State*, 658 S.W.3d 366, 372−73 (Tex. App.—Corpus Christi 2022, no pet.); *Brimzy v. State,* 2024 WL 1313406, at *1. The second camp includes the Seventh, Ninth, and Twelfth Courts of Appeals. *See Johnson v. State*, No. 07-19-00031-CR, 2019 WL 2872292, at *4 (Tex. App.—Amarillo July 3, 2019) (mem. op., not designated for publication); *Bush v. State*, Nos. 09-18-00414-CR & 09-18-00424-CR, 2019 WL 2607592, at *2 (Tex. App.—Beaumont June 26, 2019) (mem. op., not designated for publication); *Rushing v. State*, No. 12-21-00052-CR, 2022 WL 868715 (Tex. App.—Tyler Mar. 23, 2022, no pet.) (mem. op., not designated for publication).

1313406 at *5. That is to say, they have read "only" essentially to mean "at the very least." They have therefore applied the failure-to-pay statute to all cases in which nonpayment is at least one of the grounds alleged and pursued for revocation. *Id.* at *4; *Scales v. State*, 658 S.W.3d 366, 372–73 (Tex. App.—Corpus Christi 2022, no pet.).

These courts of appeals have concluded that a literal reading of the failure-to-pay statute, which would apply only when nonpayment is the sole ground *alleged* and pursued by the State, results in an absurdity that the Legislature could not possibly have intended. *Brimzy,* 2024 WL 1313406 at *4; *Scales,* 658 S.W.3d at 372–73. The absurd result, in those courts of appeals' opinion, is allowing the State to allege frivolous grounds for revocation in addition to failure to pay, just to avoid the additional burden that the failure-to-pay statute would impose.[14] *Brown v. State*, S.W.3d 518, 520 n.3 (Tex. App.—Fort Worth 2011, pet. ref'd) (citing *Stanfield*, 718 S.W.2d at 736).

Additionally, these courts of appeals relied heavily upon their own perception of the legislative history and what they believed to be the legislative intent behind the law. *See Brimzy,* 2024 WL 1313406 at *4; *Scales*, 658 S.W.3d at 372–73. These courts of appeals have insisted that the Legislature was aware of *Stanfield's* construction of the word "only" when it drafted the 2007 amendment to the statute that re-assigned the burden of proof to the State. *Brimzy,* 2024 WL 1313406 at *5. Therefore, they have concluded, the Legislature must have intended to use the *Stanfield* meaning of "only" when crafting the new statute. *Id.*

---

[14] *But see* TEX. R. PROF. COND. Rule 3.01 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.").

What is more, these courts of appeals have bolstered their position by arguing that *Stanfield*'s definition of the word "only" is consistent with the due process requirements announced in *Bearden*, and they believe the legislative history shows that the 2007 amendment was passed to accommodate that very due process decision by the United States Supreme Court. *Id.*

Some other Texas courts of appeals have read the failure-to-pay statute consistently with what they perceive to be its plain language. *See, e.g.*, *Rushing v. State*, No. 12-21-00052-CR, 2022 WL 868715 (Tex. App.—Tyler Mar. 23, 2022, no pet.); *Johnson v. State*, No. 07-19-00031-CR, 2019 WL 2872292, at *4 (Tex. App.—Amarillo July 3, 2019) (mem. op., not designated for publication). *Rushing*, for example, distinguished *Stanfield's* construction of "only" and relied on the widely accepted meaning of the word as a limiting adverb. *See id.* at *3. Thus, the court of appeals concluded there that, the failure-to-pay statute applies *exclusively* when the State's *sole allegation* is nonpayment. *Rushing* refused to "presume that the Legislature unintentionally included the word 'only' or intended that it be ignored." *Id.* (citing *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018)). Finally, these courts of appeals seem to have rejected the proposition that to apply the failure-to-pay statute in this more restrictive way leads to absurd results. *Rushing*, 2022 WL 868715 at *3.

With this statutory history and description of the competing courts of appeals' viewpoints in mind, we now address the proper scope of Article 42A.751(i).

## IV. ANALYSIS

### A.  Statutory Construction

In construing a statute, a reviewing court begins with "its literal text[.]" *Chiarini v. State*, 442 S.W.3d 318, 320 (Tex. Crim. App. 2014). If the meaning of a statutory word is plain, when read in context and in accordance with the rules of grammar and common usage, then that is the meaning the reviewing court should attribute to the Legislature. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). The reviewing court may not deviate from the literal text unless "the text does not bear a plain contextual meaning," or "the text's unambiguous meaning would lead to" absurd results the Legislature could not have intended. *Timmins v. State*, 601 S.W.3d 345, 348 (Tex. Crim. App. 2020).

### B.  Is the Meaning Plain?

So, is the meaning of the word "only"—as an adverb modifying "alleged" in Article 42A.751(i)—ambiguous, or is its import to be regarded as plain when read in the context of the statutory scheme, according to the rules of grammar and common usage, and in light of the statute's history of amendments? The Court has said that a statute is ambiguous if reasonably informed persons would understand it to be susceptible to two or more different interpretations. *State v. Green*, 682 S.W.3d 253, 264 (Tex. Crim. App. 2024). Moreover, in considering an amended statute, the Court has also said that reviewing courts typically consider the amended statutory language as if it had originally been enacted in its amended form. *Id*. at 266.

The parties in this case do not seriously dispute that the meaning of the word "only" in Article 42A.751(i) is plain enough—at least when

read in context and as if the statute had been originally enacted in what is essentially its current form, in 2007.[15] The word "only" operates in the context of the statute as an adverb, directly modifying the transitive verb "alleged." The direct object of that transitive verb—the thing that completes its meaning—is the clause that comes directly after the word "that" in the sentence, namely: "the defendant violated the conditions of community supervision by failing to pay" community supervision fees, court costs, or the cost of legal services. TEX. CODE CRIM. PROC. art. 42A.751(i). The most natural meaning to attribute to the word "only" in this context is the primary definition (in its adverbial form) in the dictionaries we have consulted; to wit: "as just the one simple thing and nothing more or different[,]" or "[w]ithout anything or anyone else: ALONE[.]"[16] According to this definition, the last clause of the sentence,

---

[15] Besides being simply recodified in Chapter 42A in 2015, with no substantive change, Article 42A.751(i) has been amended again only once, in 2017. *See* note 13, *ante*. As we have already observed, nothing about the 2017 amendment could be read as affecting the meaning of "alleged only" as it appears in the context of the provision as a whole.

[16] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED, at 1577 (2002), and WEBSTER'S II NEW COLLEGIATE DICTIONARY, at 765 (1999), respectively. Both dictionaries also provide, as alternatives for the adverbial form of "only," the definition "at the very least[.]" *Id.* But we note that in the illustrations given of the use of the word "only" in this sense, the adverb precedes the transitive verb instead of following it, as in Article 42A.751(i). *See* WEBSTER'S II, at 765 ("I *only* ask that justice be done."); *see also* THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 954 (3d ed. 2000) (giving as an example of "at the very least": "*if you would only come home.*"). It seems highly doubtful, even in 1977—notwithstanding the obiter dictum to the contrary in *Stanfield*—that the Legislature meant for "only" to be understood in this less-common sense when it deliberately added the word "only" in S.B. 32 (causing it to be enacted after S.B. 61) and then later expressly *repealed* the version of Section 8(c) that did *not* include "only" while deliberately *amending* the version that *did. See* note 8, *ante.* It would be

which assigns a burden to the State, applies only "[i]n a revocation hearing at which it is alleged" that a failure to pay the enumerated fees, "and nothing more or different[,]" has occurred. By this plainly evident understanding of the statute, any time the State proceeds at the revocation hearing upon a pleading that contains allegations *beyond* the "simple" claim of nonpayment of one of the enumerated fees, the statutory condition is *not* triggered, and the State has no burden (at least none imposed by the statute) to prove that the probationer could have paid but did not.

### C. The Prior-Construction Canon

The court of appeals declined to follow this most natural reading of the statute, however, because of this Court's "guidance in *Stanfield*," and "the legislative history of amendments to the statute[.]" *Brimzy*, 2024 WL 1313406, at \*4, \*5. Albeit without expressly saying so, the court of appeals thus seems to have relied on the prior-construction canon. In its purest form, that canon provides: "If a word or phrase [in a statute] has been authoritatively interpreted by the highest court in a jurisdiction, . . . a later version of that [statute] perpetuating the wording is presumed to carry forward that interpretation." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 322 (2012). In Appellant's reply brief, she now specifically

exceedingly odd to think the Legislature would go to such lengths to retain a word in a statute that it did not intend to carry its most natural meaning. Were we to construe current Article 42A.751(i) in accordance with the obiter dictum in *Stanfield*, it would effectively read the word "only" out of the statute. But in construing a statute, a reviewing court must presume that every word therein has a purpose that should be given effect if reasonably possible. *Wagner*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018); TEX. GOV'T CODE § 311.021(2).

invokes the prior-construction canon to argue that this Court's interpretation of the adverb "only" in *Stanfield* should control our construction of the phrase "alleged only" in current Article 42A.751(i).

We disagree. This Court has explained that, "when there has been no settled interpretation of the statutory phrase about which the [L]egislature could have been made aware, the [prior-construction] presumption does not apply." *Watkins v. State*, 619 S.W.3d 265, 281 (Tex. Crim. App. 2021); *see also* Scalia & Garner, at 326 ("[W]e emphasize that [the prior-construction canon] applies only to presumed legislative approval of prior judicial . . . interpretations in statutes adopted after those interpretations."). Because, as we have shown, *Stanfield*'s construction of "only" was pure dicta, it did not constitute a settled interpretation of the statutory phrase. "Moreover, the general rule that a later statute will be interpreted in accordance with a judicial construction of a prior statute does not apply where the later statute is unambiguous." 82 CJS Statutes § 466, at 651 (2022). Given these qualifications to the prior-construction canon, we reject the court of appeals' construction and Appellant's reliance on it here, for the following reasons.

Principally, as we have explained, the text of current Article 42A.751(i) is unambiguous with respect to how the adverb "only" should operate within it. That being so, we will not invoke the prior-construction canon to distort it. In any event, even if we believed it would be appropriate to invoke the prior-construction canon despite the lack of ambiguity, it would not avail Appellant at all given the statutory history as we have outlined it above. We reach this conclusion for two reasons.

First, as we have shown, the Court's remarks in *Stanfield*—with respect to what it regarded as the preferred construction of "only" in one of the competing versions (S.B. 32) of former Article 42.12, Section 8(c)—were pure obiter dicta, meaning that they were utterly unnecessary to the Court's disposition of the case. As such, those observations do not provide an authoritative prior construction that would serve to bind us now. They certainly do not present a compelling reason to ignore the otherwise plain import of the word "only" in the current iteration of the statute.

The second reason we decline to invoke the prior-construction canon to alter the plain meaning of Article 42A.751(i) is because of the timing of the Court's decision in *Stanfield*. In applying the prior-construction canon, the court of appeals appears to have focused its attention on the 2007 amendment to then-Article 42.12, Section 21(c), wherein the Legislature shifted the burden of proof on the issue of ability to pay from the probationer back to the State. *Brimzy*, 2024 WL 1313406, at *4. Because that amendment came after *Stanfield* was decided, the court of appeals was able to presume that the Legislature had before it a construction of the word "only" that it could fall back on as the established meaning for purposes of subsequent enactments.

But the court of appeals skipped a step—it failed to account for the 1981 amendment. There, the Legislature united the two competing versions of former Article 42.12, Section 8(c), as it had been passed in 1977. In doing so, the Legislature quite deliberately retained the adverb "only" as it had first appeared in S.B. 32—and it did so more than five years before *Stanfield* was decided. Under these circumstances, we

cannot presume that the 1981 legislative fix was meant to incorporate *Stanfield*'s peculiar construction of "only," *since it did not yet exist* at the time of that amendment.

We likewise refuse to presume, as the court of appeals did, that in passing a *subsequent* amendment, in 2007, the Legislature tacitly chose *Stanfield*'s peculiar construction of "only" over the plain-language construction it had all but certainly adopted in its 1981 unification of 1977's competing Section 8(c)'s. For this reason, as well, we do not regard application of the prior-construction canon as a reliable basis to justify deviating from the otherwise clear import of the language of current Article 42A.751(i). "Only," as used in the statute means "only," as understood in common parlance, not "at the very least."

### D.  Is the Result Absurd?

Absurd results are those "that the Legislature could not possibly have intended[.]" *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). The absurdity doctrine provides only a narrow exception to the general rule to effectuate plain language because reviewing courts must presume that the Legislature does not act in absurd ways. *Id.* Moreover, judicial disagreement with a legislative policy decision does not equate with an absurd result. *Cockrell v. State*, ___ S.W.3d ___, PD-0760-24, 2025 WL 2417047, at *4 (Tex. Crim. App. Aug. 20, 2025). Reviewing courts are not at liberty to "construe a statute in a manner that substitutes what [they] believe is right or fair for what the Legislature has written." *Ex parte Kibler*, 664 S.W.3d 220, 233 (Tex. Crim. App. 2022). Simply put, reviewing courts do not disturb policy decisions of the Legislature. *Id.*

So, would it be patently absurd for the Legislature to impose a burden of proof on the State "in a revocation hearing"—but only when the State has "alleged only"—that is to say, alleged "nothing more or different" than—nonpayment?[17] Guided by *Stanfield*, the court of appeals believed so—if only because it believed, like the *Stanfield* Court, that the failure to impose the burden under broader circumstances would encourage the State to proceed in bad faith, alleging other claims in support of revocation/adjudication despite knowing it had an insufficient basis to prove those claims. *Brimzy*, 2024 WL 1313406, at *5; *see also Scales*, 658 S.W.3d at 372 (concluding that application of Article 42A.751(i)'s plain meaning would be "absurd" because it would "reward[] the State for alleging additional violations that the trial court ultimately found unconvincing").

But here again, we conclude that *Stanfield* does not control. Whatever absurdity *Stanfield* may have perceived in construing "only" in its most natural sense in the context of a statute assigning the burden of proof on the issue of ability to pay to the *probationer* does not necessarily apply now that the statute re-assigns the burden to the *State*. In restoring the burden of proof to the State in 2007, the Legislature may well have made a deliberate policy choice to limit its application to cases in which the State opts to proceed only on an allegation of nonpayment, as a way of encouraging the State to rely upon grounds more substantial than mere nonpayment of fees or costs, whenever possible, to adjudicate guilt or revoke community supervision.

---

[17] Tex. Code Crim. Proc. art. 42A.751(i); *see* Webster's Third New International Dictionary, at 1577 ("as just the one simple thing and nothing more or different").

"[T]he fundamental fairness required by the Fourteenth Amendment" Due Process Clause, the United States Supreme Court has said, prohibits a trial court from revoking a probationer's community supervision and then imprisoning him for failure to pay probationary assessments if he "has made bona fide efforts to pay." *Bearden*, 461 U.S. at 672. To protect a probationer's due process right, *Bearden* imposed a duty on the trial court to "inquire into the reasons for the failure to pay." *Id.* But *Bearden* said nothing about whether or how to assign a burden of proof on the issue of the probationer's ability to pay, instead assigning a due process obligation on the trial court *sua sponte* to inquire. *Id.*

Due process does not obligate state legislatures to pass statutes that assign a burden of proof to the State. That the Texas Legislature has done so means it has provided greater protection to probationers than due process requires. But the Legislature is free, consistent with due process, to circumscribe the application of that greater protection, for policy reasons. *Cf. Rushing v. State*, 85 S.W.3d 283, 285−86 (Tex. Crim. App. 2002) (when the Legislature confers rights by statute that exceed the constitutional minimum, it may limit the application of those statutorily conferred rights); *Moon*, 667 S.W.3d at 804 n.11 (same).

It would also not be inconsistent with *Bearden* for the Legislature to impose a burden on the State only under these narrow circumstances. The Legislature might have decided that such a heightened burden was most appropriate when a probationer's ability to pay would *necessarily* prove to be the decisive issue in a hearing to revoke or adjudicate guilt— namely, when that is the only issue upon which the State's pleading purports to proceed at the hearing itself. And, by limiting the greater

protection of an assigned burden on the State to this circumstance, the Legislature might have sought to encourage the State, whenever possible, to proceed to revoke or adjudicate on grounds *beyond* the failure to pay, since that ground, when pursued *alone*, is fraught with due process complications. It is not innately absurd to think that the Legislature would choose to add more protection than what due process requires—but only under these limited circumstances.

What is more, it does not necessarily demonstrate an absurd result that a prosecutor might try to thwart the intended operation of the statute, as plainly construed, by alleging a patently baseless ground for revocation/adjudication simply to avoid assuming the statutory burden. A prosecutor is ethically bound to refrain from bringing such frivolous claims. *See* TEX. R. PROF. COND. Rule 3.01 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous."). Prosecutors may act in many ways, intentionally or not, that could subvert criminal proceedings, but "[t]he primary safeguard against abuses is . . . the ethical responsibility of the prosecutor." *United States v. Ash*, 413 U.S. 300, 320 (1973). Both the court of appeals and Appellant would have us believe that prosecutors— and the State generally—would jump at the chance to be deliberately manipulative in this way. But the Legislature is entitled to enact law under the assumption that a prosecutor's "primary duty" to "see that justice is done" will abide. *See Grey v. State*, 298 S.W.3d 644, 651 (Tex. Crim. App. 2009) (citing TEX. CODE CRIM. PROC. art. 2.01). And the Legislature might well have reasoned that justice is better served in any

given revocation or adjudication hearing if colorable claims of probation violations—beyond those of mere nonpayment of fees or costs—are in play.

Finally, the Legislature would not act "irrationally" to enact such a circumscribed statute with the understanding that, even if ethical safeguards were to fail, "review remains available under due process standards."[18] *Ash*, 413 U.S. at 320. If a prosecutor were to allege purely frivolous claims in a revocation/adjudication motion merely to avoid the statutory burden, then the trial court would presumably revoke, if at all, based on nonpayment alone. Under those circumstances, *Bearden*'s due process protections would be triggered, requiring the trial court to determine that the probationer's nonpayment was willful—*i.e.*, that the probationer could pay but did not—before imposing imprisonment on the probationer. *Id*. at 667.[19] It is not absurd to suppose that the

---

[18] *See Brimzy*, 2024 WL 1313406, at *4 (quoting this Court's characterization, in *Stanfield*, of a plain-view construction of "alleged only" in addressing the competing versions of former Article 42.12, Section 8(c), as "irrational").

[19] To be clear, we are not here addressing Appellant's due process claim that she raised in the court of appeals. That court concluded she failed to properly preserve that claim. *See Brimzy,* 2024 WL 1313406 at *2. Rather, our discussion of *Bearden* is intended to emphasize that a plain-view reading of the failure-to-pay statute does not render absurd results, since a prosecutor's impulse to manipulate will be held in check through ethical obligations, and due process principles will still serve to protect the interests of the probationer in any event. None of this is to say that Appellant could not eventually litigate the gist of her due process claim under some other constitutional guise, such as the ineffective assistance of counsel, in a post-conviction application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.09.

Legislature might have passed Article 42A.751(i)'s limited burden of proof while mindful of this due process failsafe.[20]

We conclude that Article 42A.751(i), the failure-to-pay statute, is not absurd when read according to its plain dictates. The Legislature could rationally have intended to impose a higher burden on the State in limited situations, and because ethical and due process safeguards protect a probationer in the unlikely event that a prosecutor should scheme to avoid his burden under the statute. We will not condone deviating from the plain import of the statute on account of absurdity when no actual absurdity is discernable.

## V. CONCLUSION

Here, the motion to adjudicate alleged grounds in addition to Appellant's nonpayment of supervision fees; indeed, the State pursued those additional grounds in the revocation/adjudication hearing. Under these circumstances, Article 42A.751(i) does not assign an additional burden of proof to the State—even where, as here, the trial court ultimately ordered adjudication based on the nonpayment ground alone. The court of appeals erred to conclude that the trial court's order was invalid on the ground that the State failed to satisfy a statutory burden

---

[20] The absurdity doctrine does not justify judicial rejection of outcomes that are merely "odd" or (in *Stanfield*'s description, "anomalous"); instead, it is "meant to correct obviously *unintended* dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense." Scalia & Garner, at 237, 239. Accordingly, even if we agreed that applying the plain meaning of "alleged only" in Article 42A.751(i) would result in "anomalous" consequences, *Stanfield*, 718 S.W.2d at 737, that would not by itself justify our application of the absurdity doctrine to avoid them. Instead, another legislative fix would be required. *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005).

to show that Appellant was able to, but did not, pay her community-supervision fees. The State acquired no such burden in this case.

The judgment of the court of appeals is reversed and the trial court's order to adjudicate is reinstated.

**DELIVERED:**                                    October 30, 2025
**PUBLISH**